# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**ex rel DARRELL V. MCGRAW, JR.**
**Attorney General,**

              Plaintiff,

v.                                                   Civil Action No. 2:12-3760

**AMERISOURCEBERGEN DRUG CORPORATION,**
a Delaware corporation doing business in
West Virginia, **MIAMI-LUKEN, INC.**, an
Ohio corporation doing business in West Virginia,
**J.M. SMITH CORPORATION d/b/a SMITH DRUG
COMPANY,** a South Carolina corporation doing
business in West Virginia, **THE HARVARD DRUG
GROUP LLC,** a Michigan corporation doing business
in West Virginia, **ANDA, INC.,** a Florida corporation doing
business in West Virginia, **ASSOCIATED PHARMACIES,
INC.,** an Alabama corporation doing business in West
Virginia, **AUBURN PHARMACEUTICAL COMPANY,** a
Michigan corporation doing business in West Virginia,
**H. D. SMITH WHOLESALE DRUG COMPANY,** a
Delaware corporation doing business in West Virginia,
**KEYSOURCE MEDICAL INC.,** an Ohio corporation
doing business in West Virginia, **MASTERS
PHARMACEUTICALS, INC.,** an Ohio corporation doing
business in West Virginia, **QUEST PHARMACEUTICALS,
INC.,** a Kentucky corporation doing business in West Virginia,
**RICHIE PHARMACAL CO., INC.,** a Kentucky corporation
doing business in West Virginia, **TOP RX., INC.,** a Tennessee
corporation doing business in West Virginia,

              Defendants.

---

## NOTICE OF REMOVAL

---

COMES NOW Defendant J M Smith Corporation d/b/a Smith Drug Company, by its counsel, and hereby files this Notice of Removal to remove this action to the United States District Court for the Southern District of West Virginia, Charleston Division, in accordance with 28 U.S.C. §§ 1332, 1441, and 1446.

## I.   INTRODUCTION

1.     On or about June 26, 2012[1], a civil action styled <u>State of West Virginia, ex rel. Darrell V. McGraw, Attorney General v. J.M. Smith Corporation d/b/a Smith Drug Company et al</u>, Civil Action No. 12-C-141, was filed in the Circuit Court of Boone County by the Office of the Attorney General in conjunction with two private attorneys. The Attorney General is the only named plaintiff.

2.     This action is appropriate for removal under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the real parties in interest to the claims set forth in the complaint are the West Virginia residents who allegedly purchased prescription medications distributed to West Virginia pharmacies by these Defendants.  The Attorney General has also fraudulently joined the State of West Virginia to this civil action in an attempt to defeat diversity jurisdiction.  Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over those claims, if any, that are not independently removable.

---

[1] The Federal Courts Jurisdiction and Venue Clarification Act of 2011 became effective on January 6, 2012.  The Act applies to all suits commenced in either state or federal court on or after January 6, 2012.  This Act affects the removal analysis in the instant action as the Complaint was filed on June 26, 2012.

Smith Drug Company also invokes all other grounds for removal, including but not limited to federal preemption.

3.     The complaint asserts several claims seeking various types of relief. Count One seeks injunctive relief for alleged violations of the Uniform Controlled Substances Act and corresponding regulations.  Compl. at ¶ 12-21.  Count Two seeks compensatory damages for alleged negligence and violations of the Uniform Controlled Substances Act.  Compl. at ¶ 22-28.  Count Three seeks compensatory and statutory damages for alleged violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), including but not limited to: "[a]ctual damages for past and future violations of the WVCCPA as authorized by W. Va. Code § 46A-5-101(a)," "[s]tatutory damages in the maximum amount authorized by W.Va. Code § 46A-5-101(1) as adjusted for inflation pursuant to W. Va. Code § 46A-5-106," "[a]ttorney fees and court costs, pursuant to W. Va. § 46A-5-104," and "[p]enalties for each willful violation pursuant to W. Va. Code § 46A-7-111(2)."  Compl. at ¶ 29-38.  Count Four seeks compensatory damages alleged as proximately arising from an alleged public nuisance.  Compl. at ¶ 39-45.  Count Five alleges unjust enrichment and seeks disgorgement of profits.  Compl. at ¶ 46-50.  Count Six asserts a common law negligence claim and seeks compensatory damages proximately caused by Defendants' negligence.  Compl. at ¶ 51-60.  Count Seven seeks to establish a medical monitoring program for the individual citizens of West Virginia who abused large quantities of controlled substances allegedly distributed to West Virginia pharmacies by Defendants.  Compl. at ¶ 61-66.  Count Eight asserts violations of the West Virginia Antitrust Act, §47-18-3(b)(1)(B) and W.Va. Code §47-

18-4, and seeks treble damages. Compl. at ¶ 67-74. The complaint's "Prayer for Relief" demonstrates the broad scope of damages and other relief sought by the Attorney General in this suit. Compl. at p. 22-23.

## II.    THE SUPREME COURT HAS REJECTED ANY PRESUMPTIONS AGAINST REMOVAL

4.     The United States Supreme Court expressly rejected any purported presumptions against removal in Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 691 (2003). The Court held that the 1948 amendments to 28 U.S.C. § 1441(a) trumped the Court's prior teachings in Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941) that removal statutes must be strictly construed against removal and in favor of remand:

> [W]hatever apparent force this argument might have claimed when
> *Shamrock* was handed down has been qualified by later statutory
> development. At the time that case was decided, § 1441 provided simply
> that any action within original federal subject-matter jurisdiction could be
> removed. Fourteen years later, however, it was amended into its present
> form, requiring any exception to the general removability rule to be
> express. *See* Act of June 25, 1948 § 1441(a), 62 Stat 937 (authorizing
> removal over civil suits within the district courts' original jurisdiction
> "[e]xcept as otherwise expressly provided by Act of Congress"); *see also*
> 28 U.S.C. § 1441 (historical and revision notes). Since 1948, therefore,
> there has been no question that whenever the subject matter of an action
> qualifies it for removal, the burden is on a plaintiff to find an express
> exception.

Id. at 697-98 (first brackets added, other alterations original); see also Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003) (expanding on its ruling in Breuer and extending the rationale beyond those circumstances where Congress expressly provided for concurrent state/federal jurisdiction); see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 125 S. Ct. 2363 (2005); see also Exxon Mobil Corp. v. Allapattah Servs.,

<u>Inc.</u>, 125 S. Ct. 2611, 2620 (2005) ("We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides. . . . Ordinary principles of statutory construction apply."(citation omitted)).

### III.   SUBJECT MATTER JURISDICTION EXISTS UNDER CAFA.

5.    "CAFA represents a Congressional extension of diversity-based subject matter jurisdiction to class actions when there is minimal diversity and the total amount in controversy exceeds $5,000,000, exclusive of interests and costs." <u>West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.</u>, 748 F. Supp. 2d 580, 588 (S.D. W. Va. 2010) <u>aff'd</u>, 646 F.3d 169 (4th Cir. 2011) <u>cert. denied</u>, 132 S. Ct. 761, 181 L. Ed. 2d 484 (U.S. 2011). For purposes of removal, CAFA defines a "class action" in two ways.  First, a "class action" includes "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute . . . authorizing an action to be brought by one or more representative persons as a class action."  28 U.S.C.§ 1332(d)(11)(a).  Second, a "mass action" is any civil action "in which monetary relief claims of 100 or more persons involve common questions of law or fact."  <u>Id.</u> at § 1332(d)(11)(B)(i).

6.    The fact that the Attorney General does not label this matter a "class action" is irrelevant as a complaint may be removed under CAFA even when the pleading is not denominated as a class action.  <u>See, e.g.</u>, <u>Louisiana ex rel. Caldwell v. Allstate Ins. Co.</u>, 536 F.3d 418 (5th Cir. 2008).  In adopting CAFA, Congress emphasized that the term "class action" should be defined broadly to prevent "jurisdictional gamesmanship":

> [T]he Committee further notes that the definition of "class action" is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labeled "class actions" by the named plaintiff or state rulemaking authority. Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions.

S. Rep. No. 109-14, at 35 (2005).

### A.   Jurisdictional Standards.

7.     In determining whether an action is a "mass action" under CAFA, a court must identify the real party in interest to the complaint. See, e.g., Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980)(recognizing that it is well established that the real parties in interest govern the jurisdictional analysis).  In actions brought by a state attorney general purporting to pursue state interests, courts must determine if the attorney general is acting in his capacity as *parens patriae*.  See Louisiana ex rel. Caldwell v. Allstate Insurance Co., 536 F.3d 418, 425 (5th Cir. 2008); see also West Virginia ex rel. McGraw v. JPMorgan Chase & Co., CIV.A. 3:11-0683, 2012 WL 414560, *11 (S.D. W. Va. Feb. 10, 2012).  "If the individual consumers are the real parties in interest, the action presents the claims of numerous plaintiffs, and the claim should not avoid removal [under CAFA] simply because the Attorney General is the named plaintiff." JPMorgan Chase & Co., 2012 WL 414560 at *11.  On the other hand, "if the Attorney General is the real party in interest, pursuing his interests as *parens patriae*, there is only one plaintiff, and the action is not a mass action." Id.

8.     Although the Attorney General claims to be pursuing the interests of the State of West Virginia as *parens patriae*, the type of claims asserted and the specific

6

relief sought in this mass action indicate otherwise. This action is, in substance and fact, a mass action removable under CAFA because West Virginia residents who allegedly purchased prescription drugs distributed to West Virginia pharmacies by these Defendants are the real parties in interest.

9.      To bring a *parens patriae* action, "the State must articulate an interest apart from the interests of particular private parties, i.e., the State must be more than a nominal party." Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 606 (1982). United States Courts of Appeals have split on the issue of how to determine whether a state attorney general is pursuing private interests or *parens patriae* interests for purposes of determining the real parties in interest for removal under CAFA. The United States Court of Appeals for the Fifth Circuit, in Louisiana ex rel. Caldwell v. Allstate Insurance Co., 536 F.3d 418 (5th Cir. 2008), concluded that Louisiana residents were the real parties in interest as the state sought private remedies - treble damages - for certain Louisiana insurance policy holders. See also West Virginia ex rel. Comcast Corp., 705 F.Supp.2d 441 (E.D. Pa. 2010) (finding that a *parens patriae* antitrust and consumer protection suit brought by West Virginia was removable as a class action under CAFA as West Virginia residents were the real parties in interest for West Virginia's treble damages claim). The United States Court of Appeals for the Seventh Circuit, in LG Display Co., Ltd. v. Madigan, 665 F.3d 768 (7th Cir. 2012), rejected the claim-by-claim approach in Caldwell. See also JPMorgan Chase, 2012 WL 414560 at *11 (following Madigan). The Seventh Circuit held that "[w]hether a state is the real party in interest in a suit is a question to be determined from the essential nature and effect of

7

the proceeding." Id. at 773 (internal quotation marks omitted). The United States Court of Appeals for the Fourth Circuit has not recognized either approach, but it did acknowledge that "the *parens patriae* analysis set forth . . . in [Caldwell] is helpful in some respects . . . ." West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., 646 F.3d 169, 176 n.2 (4th Cir. 2011).

10.     This Court should adopt the analysis set forth in Caldwell. The Fifth Circuit's analysis in Caldwell is most consistent with United States Supreme Court's analysis of the limitations and reach of *parens patriae* actions, as set forth in Snapp, 458 U.S. 592 and Hawaii v. Standard Oil Co. of Ca., 405 U.S. 251 (1972). However, should this Court adopt the Seventh Circuit's line of reasoning in Madigan, the end-result remains same: the Attorney General is merely a nominal party and the real parties in interest are the residents of West Virginia. [2]

**B.     The real parties in interest are the citizens of West Virginia.**

11.     The West Virginia Attorney General's powers are limited. See In Re Allen, 106 F.3d 582, 598 (4th Cir. 1997)("...the duties of the West Virginia Attorney General are narrowly limited.") The Supreme Court of Appeals of West Virginia has noted that the "Attorney General has no common law powers and duties where the constitutional provision which creates the office makes no specific grant of powers other than requiring him to perform such duties as are 'prescribed by law.'" Manchin v. Browning, 296 S.E.2d 909, 916 (W. Va. 1982). The Supreme Court of Appeals of West Virginia has

---

[2] By making this argument and as noted in Section IV of this notice, Defendant is not conceding that plaintiff has stated any claim which will survive a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure.

further held that those powers "prescribed by law" are granted by the legislature in statutes. See Fahlgren Martin, Inc. v. McGraw, 438 S.E.2d 338, syl. pt. 2 (W. Va. 1993).

12.     Neither the West Virginia Constitution nor the West Virginia Legislature has authorized the Attorney General to bring the claims set forth in Counts I through VII of the complaint.[3]  The Attorney General is not authorized to bring independent causes of action under the West Virginia Uniform Controlled Substances Act.  The West Virginia Legislature made clear that law enforcement personnel and the West Virginia State Board of Pharmacy are charged with enforcement of the West Virginia Uniform Controlled Substances Act.  See W. Va. Code §§ 60A-5-501(a)-(b).  The Attorney General is authorized only to assist in the enforcement of the Act.  See id. at § 60A-5-501(c)("All prosecuting attorneys and the attorney general, or any of their assistants, shall assist in the enforcement of the act and shall cooperate with all agencies charged with enforcement of the laws of the United States, of this State, and of all other states relating to controlled substances.").  When the legislature wants to confer authority on the Attorney General to bring an independent cause of action, it knows how to do so. See, e.g., W. Va. Code § 46A-7-111.

13.     Although the Attorney General has certain limited powers under the WVCCPA, the West Virginia Legislature did not authorize the Attorney General to seek "actual damages" claims of consumers under Article 5 of the Act, as he attempts to do in the complaint.  See Compl. at ¶ 38.  It is important to note that in both CVS Pharmacy

---

[3] Additionally, the Attorney General does not assert that he has been granted any authority to bring these common law causes of action.

9

and JPMorgan Chase, the Attorney General sought damages only under Article 7 of the WVCCPA, which he is statutorily authorized to do. See West Virginia ex rel McGraw v. CVS Pharmacy, Inc., 748 F.Supp.2d 580, 589 (S.D. W. Va. 2010)("Section 46A-7-111, upon which CAFA removal is based..."); see also JPMorgan Chase, 2012 WL 414560 at *9-10.

14.     Moreover, as the Attorney General has no common law powers, he is not authorized to bring Count IV (public nuisance), Count V (unjust enrichment), Count VI (negligence), and Count VII (medical monitoring). See Manchin, 296 S.E.2d at 916; see also Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665-73 (8th 2009).

15.     As further explained in Section IV, the Attorney General is powerless to assert the claims that he is alleging on behalf of the State of West Virginia as a matter of law and, therefore, the State is fraudulently joined to defeat diversity jurisdiction. Since the Attorney General has stated no cognizable claims or has a "glimmer of hope" for recovering on such claims, they are entitled to no weight or consideration on the question of whether the "essential nature and effect of the proceeding," Madigan, 665 F.3d at 773, is one in fact within the proper scope of a *parens patriae* proceeding. They are instead thinly disguised attempts by the Attorney General to become the figurehead of aggregate claims which belong correctly to individual citizens.

16.     This case is also being brought by private attorneys from the law firms Cagle & Jackson and DiTrapano, Barrett, and DiPiero. Additionally, one of the private attorneys bringing this action, James Cagle, has filed several civil actions in West Virginia state court in which individual plaintiffs have alleged similar causes of action

against individual pharmacies and physicians.  Accordingly, the Attorney General is not acting in his capacity as *parens patriae*, and the real parties in interest for jurisdictional analysis under CAFA are the West Virginia residents who allegedly purchased prescription drugs distributed to West Virginia pharmacies by these Defendants.  See, e.g., Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 738-40 (9th Cir. 2011)(holding that individuals are real parties in interest when a state sues on behalf of individuals to obtain relief that the individuals could have obtained on their own).

     **C.**     **This action is removable as a "mass action" under CAFA.**

     17.     Once the Court looks beyond the "*parens patriae*" label, it is clear that this action is removable as a "mass action" under CAFA.  See 28 U.S.C. § 1332(d)(11).  A "mass action" is a civil lawsuit brought on a non-class basis by 100 or more plaintiffs who "propose" to try monetary relief claims jointly on the grounds that the claims involve common questions of law or fact.  The purpose of CAFA's mass action provisions is to prevent plaintiffs from avoiding federal jurisdiction by bringing cases with numerous plaintiffs on a non-class basis. See e.g., Lowery v. Ala. Power Co., 483 F.3d 1184 (11th Cir. 2010).  The threshold requirements for removal as a mass action are all met: (1) the parties are at least minimally diverse (the complaint acknowledges that all of the members of the putative class have a different citizenship from all of the defendants); (2) the aggregate amount in controversy exceeds $5,000,000.00; (3) CAFA's numerosity requirement is satisfied; and (4) the complaint alleges common questions of law and fact.

1.      **The parties are diverse.**

18.    The real parties in interest – the West Virginia residents who have purchased prescription medication distributed by the Defendants – constitute the putative class members under CAFA.  28 U.S.C. § 1332(d)(1)(D).  The putative class members are therefore West Virginia citizens and residents.  <u>See</u> Compl. at ¶ 9 (("These Defendants derived substantial revenue as the result of the prescriptive drugs which were distributed to West Virginia entities and later consumed by persons *then residing in West Virginia.*")(emphasis added)).

19.    According to the complaint, all of the Defendants are citizens of states other than West Virginia:

- AmerisourceBergen Drug Corporation is a Delaware corporation with its principal place of business in Pennsylvania;

- Miami-Luken, Inc. is an Ohio corporation with its principal place of business in Pennsylvania;

- Associated Pharmacies, Inc. is an Alabama corporation with its principal place of business in Alabama;

- J M Smith Corporation, d/b/a Smith Drug Company, is a South Carolina corporation with its principal place of business in South Carolina;

- The Harvard Drug Group, LLC, is a Michigan limited liability company with its principal place of business in Michigan.  The sole member of the Harvard Drug Group, LLC, is Generic Drug Holdings, Inc., a Delaware corporation with its principal place of business in Michigan;

12

- Anda, Inc., is a Florida corporation with its principal place of business in Florida;

- Auburn Pharmaceutical Company is a Michigan corporation with its principal place of business in Michigan;

- H.D. Smith Wholesale Drug Company is a Delaware corporation with its principal place of business in Illinois;

- Keysource Medical Inc. is an Ohio corporation with its principal place of business in Ohio;

- Masters Pharmaceutical, Inc. is an Ohio corporation with its principal place of business in Ohio;

- Quest Pharmaceuticals, Inc. is a Kentucky corporation with its principal place of business in Kentucky;

- Richie Enterprises LLC d/b/a Richie Pharmcal Co., Inc. is a limited liability company whose members are all Kentucky residents. Richie Pharmcal Co., Inc.'s principal place of business is in Kentucky; and

- Top RX, Inc. is a Tennessee corporation.

Compl. at ¶ 8. Thus, according to the complaint, the parties are completely diverse and CAFA's minimal diversity requirement is more than met. See 28 U.S.C. § 1332(d)(2)(A) (requiring only minimal diversity).

**2.      The amount in controversy exceeds $5,000,000.00.**

20.     For jurisdiction to exist under CAFA, the amount in controversy must exceed "the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2). "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy" meets the $5,000,000 threshold. Id. at § 1332(d)(6).  This threshold is easily satisfied:

- The complaint alleges that costs associated with the allegations in the complaint exceed "$430 million annually in the year 2010 with costs projected to be as much as $695 million annually by 2017", which the Attorney General seeks as damages in this action.  Compl. at ¶ 6(a); Prayer for Relief of Compl. at ¶ 2(d).

- The Attorney General seeks disgorgement of the alleged unjust enrichment of the Defendants.  See Prayer for Relief of Compl. at ¶ 2(d).  The complaint alleges that for just one pharmacy in West Virginia which sold prescription drugs distributed by these Defendants, that amount could equal "hundreds of thousands of dollars . . . ."  Id. at ¶ 6(f).

- Under the WVCCPA, the complaint seeks actual damages for past and future violations under W. Va. Code § 46A-5-101(1); maximum statutory damages pursuant to W. Va. Code § 46A-5-101(1); attorneys' fees and costs pursuant to W. Va. Code § 46A-5-104; and penalties for "*each* willful violation pursuant to W. Va. Code § 46A-7-111(2)."  Compl. at ¶ 38 (emphasis in original).

- The complaint seeks treble damages for every West Virginia resident who purchased prescription drugs from these defendants.  <u>See</u> Prayer for Relief of Compl. at ¶ 2(e).

- The complaint seeks attorneys' fees, and the value of any such fees may be used in determining whether the jurisdictional threshold has been satisfied.  <u>See e.g.</u>, <u>Countryman v. NCO Fin Sys.</u>, No. 5:09-cv-002882009, U.S. Dist. LEXIS 50054 (S.D. W. Va. June 9, 2009).

- The complaint seeks an injunction requiring these Defendants to alter the manner in which they market and distribute prescription drugs.  <u>See, e.g.</u>, Prayer for Relief of Compl. at ¶ 1. This action therefore threatens revenue that these Defendants derive from the sale of prescription medication to West Virginia pharmacies.  The impact of the requested injunction upon Defendants may be included as part of the amount-in-controversy analysis.  <u>See</u> <u>Moses Auto., Inc v. Am. Honda Motor Co.</u>, 581 F. Supp. 2d 763, 767-68 (S.D. W. Va. 2007).

- The complaint seeks a medical monitoring trust fund to provide for future diagnostic care and medical treatment for "abusers and dependent users resulting from their exposure to prescription drugs."  Compl. at ¶ 64.

21.    Based upon the allegations in the complaint and the Attorney General's theories of relief, it is evident that the complaint seeks damages well in excess of $5,000,000.00.

22.    For each of the reasons set forth above, the monetary claims of one or more of the West Virginia residents who purchased prescription medication distributed to West

Virginia pharmacies by these Defendants exceeds $75,000, exclusive of interest and costs.

### 3.     CAFA's numerosity requirement is satisfied.

23.     This is not an action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5)(B). The Attorney General purports to bring this action on behalf of all West Virginia citizens and residents who purchased prescription drugs from these Defendants. The complaint alleges that these Defendants' contribution to the "prescription drug epidemic" in West Virginia has resulted in the following:

- 21.5 deaths per 100,000 West Virginia residents in 2008 due to prescription drug abuse. As there are approximately 1.8 million people residing in West Virginia as of the last Census, the Attorney General is in essence arguing that over 378 people died from prescription drug abuse in 2008;

- 20% of patients admitted to Charleston Area Medical Center through the hospital's trauma service are allegedly due to narcotics abuse; and

- 90% of state prosecutors' and judges' case load are allegedly due, either directly or indirectly, to prescription drug abuse.

See Compl. at ¶ 6.

24.     The complaint also asserts that pharmacies in West Virginia filled 18.4 prescriptions per capita, making West Virginia the "'most medicated state' based upon data gathered for 2009." Id. Based upon the Attorney General's allegations and theories

of relief, it is evident that the number of purported plaintiffs in the putative class exceeds 100.

**4.    Commonality is met.**

25.    The Attorney General alleges common questions of law and fact with respect to all of the Defendants in this action.    Accordingly, all of the threshold requirements are met for a federal court to have subject matter jurisdiction over this "mass action."

**D.    This action is removable as a "class action" under CAFA.**

26.    In the alternative, this action is removable as a "class action" under CAFA. CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).    In this case, the Attorney General (through private class-action plaintiffs' attorneys) is plainly attempting to bring a claim as "representative" of a class of prescription drug purchasers.

**1.    This Attorney General has necessarily brought this civil action pursuant to Rule 23 of the West Virginia Rules of Civil Procedure.**

27.    As set forth above, the Attorney General is not authorized to pursue any of the claims set forth in Counts I through VII of the complaint.  Because the Attorney General is not authorized to bring these private causes of action, the Attorney General must have *some* procedural basis for filing on behalf of those West Virginia residents

who could in theory bring these claims individually.  By necessity, this procedural device would be Rule 23 of the West Virginia Rules of Civil Procedure.

28.    In West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., the Fourth Circuit rejected CVS Pharmacy's argument that the Attorney General's WVCCPA claims were removable under CAFA, noting that the WVCCPA "contain[s] virtually none of the essential requirements for a Rule 23 class action."  646 F.3d at 175-76.   Critical to the Fourth Circuit's holding, however, was the fact that the Attorney General was "statutorily authorized" to pursue the remedies he sought under Article 7 of the WVCCPA.  Id. at 175 (quoting West Virginia Code §§ 46A-7-111(1)-(2)); see also JPMorgan Chase, 2012 WL 414560 at *9-10 (holding that the Attorney General's action was not brought pursuant to Rule 23 of the West Virginia Rules of Civil Procedure because "[t]he WVCCPA specifically authorizes the West Virginia Attorney General to seek both injunctive and monetary relief for violations [of §§ 46A-7-109-111] of the Act.").

29.    In contrast to both CVS Pharmacy and JPMorgan Chase, the Attorney General attempts to brings this cause of action under Article 5 of the WVCCPA, which he is not statutorily authorized to pursue.  Moreover, as set forth above, the Attorney General is not statutorily authorized to bring any of the remaining claims in Counts I through VII of the complaint.  Thus, because he is not acting in his capacity as a *parens patriae* and the real parties in interest are individual citizens, the Attorney General is attempting to bring a claim as "representative" of a class of prescription drug purchasers, which can only be accomplished through Rule 23 of the West Virginia Rules of Civil Procedure.

    **2.**      **All other threshold requirements for removal of this "class action" are met.**

    30.     As set forth above, (1) the parties are at least minimally diverse; (2) the aggregate amount in controversy exceeds $5,000,000.00; and (3) CAFA's numerosity requirement is satisfied.  Accordingly, all threshold requirements for removal as a "class action" are met, and removal is proper under 28 U.S.C. § 1332(d), 1441 and 1446.

## IV.   FRAUDULENT JOINDER OF THE STATE OF WEST VIRGINIA DOES NOT DESTROY DIVERSITY JURISDICTION

    31.     The Attorney General has fraudulently joined the State of West Virginia to this action to destroy diversity. See West Virginia ex rel. McGraw v. Minnesota Mining and Manufacturing Co., 354 F. Supp.2d 660 (S.D. W. Va. Jan. 25, 2005)(setting forth the standard for fraudulent joinder).  To prevail on a claim of fraudulent joinder, a defendant must establish one of two things: (1) there is no possibility of the plaintiff establishing a cause of action against the in-state defendant; or (2) the plaintiff has committed an outright fraud in the pleading of jurisdictional facts.  Hartley v. CSX Transp., Inc., 187 F.3d 422 (4th Cir. 1999); Marshall v. Manville Sales Corp., 6 F.3d 229, 232-33 (4th Cir. 1993) (internal citations omitted).  A plaintiff only need to establish a "glimmer of hope" to require remand of his claims.  Hartley, 187 F.3d at 425-26.

    32.     In Minnesota Mining, the manufacturers removed claiming that ". . . the attorney general has exceeded his statutory authority because the sales of the respirators/dust masks to employers do not qualify as 'consumer transactions' under the CCPA."  Id. at 667.  The Honorable John T. Copenhaver noted that "[i]n asserting the attorney general is powerless to assert some or all of the instant claims on the sovereign's

behalf, defendants are alleging, in substance, that the state was fraudulently joined as a party in order to defeat diversity jurisdiction." Id. at 666.

33.     The Attorney General has exceeded his authority by asserting common law claims as well as Article 5 claims under the WVCCPA.  As explained above, the Attorney General is not authorized to seek "actual damages" claims of consumers under Article 5 of the WVCCPA, See Compl. at ¶ 38.  Also, as stated above, the Attorney General has no common law powers to bring Count IV (public nuisance), Count V (unjust enrichment), Count VI (negligence), and Count VII (medical monitoring). See Manchin, 296 S.E.2d at 916; see also Ashley County, Ark., 552 F.3d at 665-73. Furthermore, the Attorney General fails to address, yet alone state a viable medical monitoring claim under, the factors set forth in Bower. 522 S.E.2d 424, syl. pt. 3.

34.     Even if the Attorney General had the power to bring such common law claims, the injuries claimed are too remote or speculative to give rise to *parens patriae* standing.  See Snapp, supra, ("A quasi-sovereign interest must be sufficiently concrete to create an actual controversy between State and defendant.").  The "economic loss" rule also prevents the Attorney General from pursuing a negligence claim solely for alleged economic loss to the State. See Aikens v. Debow, 541 S.E. 2d 576, 589 (W.Va. 2000)("An individual who sustains purely economic loss from an interruption in commerce caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship.").  Additionally, the Attorney General concedes that the alleged prescription drug abuse which the complaint attributes

to these Defendants is in fact caused by intervening criminal acts. <u>See</u> Compl. at ¶¶ 4, 6(g), 6(h), 43, 47, and 48. Under the doctrine of intervening criminal acts, the Attorney General is not entitled to the relief sought. <u>See, e.g.</u>, <u>Ashley County, Ark.</u>, 552 F.3d at 668-69; <u>City of Philadelphia v. Beretta U.S.A. Corp.</u>, 277 F.3d 415, 426 (3d Cir. 2002).

35.     The conduct alleged by the Attorney General in the counts alleging violations of the WVCCPA and the West Virginia Antitrust Act even if proven do not constitute "unfair or deceptive practices" under W.Va. Code § 46A-6-104 or "contracts or combinations in restraint of trade" under W.Va. Code § 47-18-3. Therefore, no such "glimmer of hope" exists as the Attorney General has exceeded his authority in bringing the claims listed in the complaint and/or the claims otherwise fail as a matter of law.[4]

## V. REMOVAL REQUIREMENTS

36.     Each defendant has 30 days after receipt by or service on that defendant of the initial pleading or summons to file the notice of removal. 28 U.S.C § 1446(b)(2)(B).[5] The West Virginia Secretary of State's office accepted service of a summons and the complaint on behalf of Smith Drug Company on June 27, 2012. Thus, Smith Drug Company timely filed this Notice of Removal.

---

[4] In asserting that the real parties in interest are the West Virginia residents who purchased prescription medication distributed to West Virginia pharmacies by these Defendants, the Defendants in no way concede that these West Virginia residents are entitled to the relief sought in the Attorney General's complaint. In fact, no person, the Attorney General nor any individual, has standing to assert claims that are legal fictions such as those asserted in this Complaint.
[5] In the 2011 Act, Congress adopted the "Last-Served Defendant Rule" and codified it in 28 U.S. C § 1446(b). If a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal. 28 U.S.C § 1446(b)(2)(B)-(C).

37.   Venue of this removal is proper under 28 U.S.C. § 1441(a), because this Court is the United States District Court for the district and division corresponding to the place in which the state court action was pending.

38.   As required by 28 U.S.C. § 1446(a), copies of all process and pleadings served upon Smith Drug Company are attached hereto as *Exhibit A*.  As of this filing, no further proceedings have occurred in the Circuit Court of Boone County, West Virginia.

39.   Although this defendant could remove this case under CAFA without obtaining the consent of the other defendants, 28 U.S.C. § 1453(b); James v. Sears & Roebuck & Co., 2007 WL 6854159 at *3 (S.D. W.Va. 2007), all of the properly joined and served defendants consent to the removal.  Their separate written notices of consent are being filed in conjunction with this Notice.[6]  Martin Oil Co. v. Philadelphia Life Ins. Co., 827 F. Supp. 1236, 1237 (N.D. W. Va. 1993); See Cristia v. West Virginia, 2010 WL 5508591, *1 (S.D. W.Va. Dec. 15, 2010) (Stanley, J.) ("In multiple defendant cases, co-defendant may file independent notices of removal within the thirty-day period of receiving service of the complaint, or join in and consent to another defendant's removal within thirty days.").

40.   Although the Attorney General bears the burden to establish any exceptions to CAFA jurisdiction, no exceptions in 28 U.S.C. 1332(d)(3), (4), (5), and (9) apply.

41.   Written notice of the filing of this Notice of Removal will be provided to the Attorney General, through his counsel, as required by 28 U.S.C. § 1446(d).

---

[6] Should the Court find that the State of West Virginia was fraudulently joined and complete diversity exists, the consent of all properly joined and served defendants meets the "Unanimity Rule" recently codified in 28 U.S.C. § 1446(A)(2)(A).

42.    A Notice of Filing of Notice of Removal, with a copy of this Notice of Removal will be promptly filed with the Clerk of the Circuit County of Boone County, West Virginia, as required by 28 U.S.C. § 1446(d).

WHEREFORE, for these reasons, Smith Drug Company has removed this action from the Circuit Court of Boone County, West Virginia, to the United States District Court for the Southern District of West Virginia, Charleston Division.

Respectfully submitted,

**J M SMITH CORPORATION d/b/a SMITH DRUG COMPANY,**

By Counsel.

/s/ Julia Chico Abbitt
Roger L. Foster, Esquire
Julia Chico Abbitt, Esquire
JACKSON KELLY PLLC
150 Clay Street, Suite 500
P.O. Box 619
Morgantown, WV  26507-0619
Phone: 304-284-4100
Fax: 304-284-4142

## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**ex rel DARRELL V. MCGRAW, JR.**
**Attorney General,**
                    Plaintiff,

v.                                                          Civil Action No.   2:12-3760

**AMERISOURCEBERGEN DRUG CORPORATION,**
a Delaware corporation doing business in
West Virginia, **MIAMI-LUKEN, INC.,** an
Ohio corporation doing business in West Virginia,
**J.M. SMITH CORPORATION d/b/a SMITH DRUG**
**COMPANY,** a South Carolina corporation doing
business in West Virginia, **THE HARVARD DRUG**
**GROUP LLC,** a Michigan corporation doing business
in West Virginia, **ANDA, INC.,** a Florida corporation doing
business in West Virginia, **ASSOCIATED PHARMACIES,**
**INC.,** an Alabama corporation doing business in West
Virginia, **AUBURN PHARMACEUTICAL COMPANY,** a
Michigan corporation doing business in West Virginia,
**H. D. SMITH WHOLESALE DRUG COMPANY,** a
Delaware corporation doing business in West Virginia,
**KEYSOURCE MEDICAL INC.,** an Ohio corporation
doing business in West Virginia, **MASTERS**
**PHARMACEUTICALS, INC.,** an Ohio corporation doing
business in West Virginia, **QUEST PHARMACEUTICALS,**
**INC.,** a Kentucky corporation doing business in West Virginia,
**RICHIE PHARMACAL CO., INC.,** a Kentucky corporation
doing business in West Virginia, **TOP RX., INC.,** a Tennessee
corporation doing business in West Virginia,

                    Defendants.

========================================================

## CERTIFICATE OF SERVICE

========================================================

    I, Julia Chico Abbitt, counsel for Defendant J M Smith Corporation, d/b/a Smith

Drug Company, do hereby certify that on the 26th day of July, 2012, a copy of the

foregoing "NOTICE OF REMOVAL" was filed with the Clerk of the Court and served electronically *via* the CM/ECF electronic filing system, and *via* United States Mail, postage pre-paid, to the following individuals:

Frances A. Hughes, Esquire
Managing Deputy Attorney General
OFFICE OF ATTORNEY GENERAL
Building 1, Room 26-E, Capitol Complex
Charleston, WV 25305
***Counsel for Plaintiff***

James M. Cagle, Esquire
CAGLE & JACKSON ATTORNEYS
P.O. Box 12326
Big Chimney Station
Charleston, WV 25301
***Counsel for Plaintiff***

Rudolph L. DiTrapano, Esquire
DITRAPANO, BARRETT & DIPIERO
604 Virginia Street, East
Charleston, WV 25301
***Counsel for Plaintiff***

Alvin L. Emch, Esquire
Laurie K. Miller, Esquire
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Charleston, WV 25301-3202
***Counsel for AmerisourceBergen Drug Corporation***

Eric W. Sitarchuk, Esquire
Meredith S. Auten, Esquire
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
***Counsel for AmerisourceBergen Drug Corporation***

Thomas J. Hurney, Jr., Esquire
David A. Barnette, Esquire
JACKSON KELLY PLLC
500 Lee Street East
Suite 1600
Charleston, WV 25301-3202
***Counsel for Miami-Luken, Inc.***

David B. Thomas, Esquire
Susan M. Robinson, Esquire
Bryant J. Spann, Esquire
Robert H. Akers, Esquire
THOMAS COMBS & SPANN, PLLC
P.O. Box 3824
Charleston, WV 25338-3824
***Counsel for The Harvard Drug Group, LLC***

Charles M. Love, III, Esquire
Fazal Shere, Esquire
BOWLES RICE MCDAVID GRAFF & LOVE LLP
600 Quarrier Street
Charleston, WV  25301
***Counsel for Anda, Inc.***

Webster J. Arceneaux, III, Esquire
Ramonda C. Lyons, Esquire
LEWIS GLASSER CASEY & ROLLINS, PLLC
BB&T Square, Suite 700
300 Summers Street
P.O Box 1746
Charleston, WV  25326-1746
***Counsel for Associated Pharmacies, Inc.***

Nathan Upfal, Esquire
THE LAW OFFICES OF JACKIER GROULD
121 West Long Lake Rd., Suite 200
Bloomfield Hills, MI 48304
***Counsel for Auburn Pharmaceutical Company***

W. Henry Jerigan, Jr., Esquire
Mark Carter, Esquire
DINSMORE & SHOHL
Huntington Square
900 Lee Street, Suite 600
Charleston, WV 25301
***Counsel for Auburn Pharmaceutical Company***

Larry Mackey, Esquire
Dean Barnhard, Esquire
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204-3535
***Counsel for H.D. Smith Wholesale Drug Company***

Rebecca A. Betts, Esquire
Pamela C. Deem, Esquire
BETTS HARDY & RODGERS, PLLC
500 Lee Street, East, Suite 800
P.O. Box 3394
Charleston, WV 25333-3394
***Counsel for H.D. Smith Wholesale Drug Company***

Niall A. Paull, Esquire
SPILMAN THOMAS & BATTLE PLLC
Spilman Center
300 Kanawha Boulevard, East
Charleston, WV 25301
***Counsel for Keysource Medical Inc.***

Nathan B. Atkinson, Esquire
SPILMAN, THOMAS & BATTLE PLLC
110 Oakwood Drive, Suite 500
Winston-Salem, NC 27103
***Counsel for Keysource Medical Inc.***

Tom Flaherty, Esquire
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box 3843
Charleston, WV 25338-3843
**Counsel for Masters Pharmaceutical, Inc.**

Russell D. Jessee, Esquire
Robert E. Ryan, Esquire
STEPTOP & JOHNSON PLLC
Chase Tower – Eighth Floor
P.O. Box 1588
Charleston, WV 25326-1588
**Counsel for Quest Pharmaceuticals, Inc.**

David B. Thomas, Esquire
Susan M. Robinson, Esquire
Bryant J. Spann, Esquire
Robert H. Akers, Esquire
THOMAS COMBS & SPANN, PLLC
P.O. Box 3824
Charleston, WV 25338-3824
**Counsel for Richie Pharmacal Co., Inc.**

Robert J. Ridge, Esquire
Alan Lopus, Esquire
THORP REED & ARMSTRONG
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219
**Counsel for Top Rx, Inc.**

Paul F.T. Edwards, Esquire
Michael Marshall, Esquire
E. Gene Thorton, III, Esquire
EVANS PETREE
1000 Ridgeway Loop Road, Suite 200
Memphis, TN 38120
**Counsel for Top Rx, Inc.**

/s/ Julia Chico Abbitt